Keith N. Biebelberg (KB-5472)
BIEBELBERG & MARTN
*Attorneys for Plaintiff, Boris Khazin*
374 Millburn Avenue
Millburn, New Jersey 07041
(973) 912-9888

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

BORIS KHAZIN

                  Plaintiff,

    v.

TD AMERITRADE HOLDING CORPORATION
AMERITRADE, INC., AMERIVEST
INVESTMENTMANAGEMENT COMPANY and
LULE DEMMISSIE, Individually,

                  Defendants.

_____

**Civil Action No.
13-CV-04149(SDW)(MCA)**

**Motion Date: November 18, 2013
Adjourned from November 4, 2013
Electronically Filed**

**Oral Argument Requested**

_____

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT OR, TO DISMISS THE ACTION AND COMPEL ARBITRATION

_____

On the Brief:

Keith N. Biebelberg, Esq.
Jay M. Nimaroff, Esq.

## PRELIMINARY STATEMENT

### Brief Summary of the Issues Before this Court

The plaintiff is an experienced professional in the financial services industry who was terminated by the defendant corporations after he had raised issues of securities' law violations. The defendants have brought a Rule 12(b)(6) motion to dismiss his Amended Complaint. Plaintiff is bringing the within lawsuit under the Whistleblower Protection and Incentive provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 124 Stat. 1376, 15 U.S.C. §78u-6(h) (the "Dodd-Frank" Act). Plaintiff's Amended Complaint raised two issues that the defendants are challenging: First, that the plaintiff is a whistleblower, as defined by Dodd-Frank, and thus eligible to receive protection against the retaliation that was taken against him. Second, that the pre-dispute arbitration agreement that the parties signed in 2006 is not enforceable, and this matter should be litigated in federal court.

The plaintiff asserts that, from any perspective, he is a whistleblower who was eligible to receive Dodd-Frank statutory protection against the defendants' retaliation. He reported defendants' violation of the Break Point Rule both internally, to his supervisor, and thereafter, externally, to the Securities and Exchange Commission ("SEC"). Although the plaintiff reported defendants' violations to the SEC, there are five cases decided in various Circuits that support his position that, to be defined as a whistleblower under Dodd-Frank, it is not even necessary to have made a report to the SEC. Additionally, there is a sixth case, decided on October 16, 2013, which supports the proposition that a whistleblower can report such violations to the SEC after he has been terminated. This last case directly rebuts defendants' "timing" and "race to fire an ethical employee" argument. Indeed, this case, Ellington v. Giacoumakis, 2013 WL 5631046

(D. Mass. 2013), analyzed, and rejected the reasoning set forth in defendants' primary case,

Asadi v. G.E. Energy (USA), L.L.C., 720 F.3d 620 (Fifth Cir. 2013).

Regarding the second issue, the enforceability of the parties's pre-dispute arbitration agreement, Dodd-Frank, which denied the enforceability of such agreements in certain instances, among them retaliation for protected disclosures, and subsequent regulations issued by the SEC and FINRA, render such an agreement  no longer enforceable.  Several cases on point support plaintiff's position that Dodd-Frank's ban on the enforceability of pre-dispute arbitration agreements should be applied retroactively.  Additionally, pursuant to the doctrine advanced in Chevron U.S.A. Inc. v. National Defense Resource Council, 467 U.S. 837 (1984), deference should be given to the interpretations of these specialized agencies, which have confirmed the non-enforceability of such pre-dispute agreements.

The defendants apparently disagree.  First, they dispute that the plaintiff is a whistleblower.  Although they acknowledge that the plaintiff made a report to the Securities and Exchange Commission, they correctly assume that this report came after the plaintiff was terminated.  They seem to think that pursuant to Dodd-Frank, he cannot be classified as a whistleblower, which would mean that Dodd-Frank incentivizes dishonest employers to terminate honorable employees who report wrongdoing internally, so that the employer can escape liability to a whistleblower by firing him expediently  before he has a chance to contact the SEC.  They fail to acknowledge that Dodd-Frank does not address the issue of the timing of a whistleblower's reporting to the SEC.  Instead, defendants rely heavily on the aforementioned Asadi case, which analyzed the Dodd-Frank Act's definition of a "whistleblower" and concluded, in a forced and formalistic fashion, that since the plaintiff therein did not report

wrongdoing  to the SEC at any time, he was not a whistleblower pursuant to the statute.[1]   As

will be shown, Asadi has received very little support from other courts, and has already been

rejected by Ellington, decided three months thereafter. Notably, Asadi failed to deal with other

key issues and competing tensions that were addressed previously by several District Courts.[2]

As will be explained, infra, Asadi is distinguishable from the present action in a number of

respects, most notably in that it was brought under the Foreign Corrupt Practices Act..[3]

Regarding the second issue, the enforceability of the parties' pre-dispute arbitration

agreement, the defendants contend that in spite of Dodd-Frank's ban on the enforceability of

such agreements when retaliation has occurred, the statute cannot be applied retroactively.  They

assert that the Pre-Dispute Arbitration Agreement that the parties signed in 2006 is fully

enforceable.  The defendants' moving papers do not address the subsequent FINRA rule, Rule

13201, the subsequent SEC Regulatory Notice, Regulatory Notice 12-21, nor the case law that

contradicts their position.

Despite this, defendants' moving papers give the inaccurate impression that the law is

settled regarding the two issues that the plaintiff has raised, and that the majority of courts

---

[1]Asadi did not involve a violation of securities law.  It involved a violation of the Foreign Corrupt Practices Act.

[2]Only one District Court has to date embraced the reasoning of Asadi, and the Judge in that case, Wagner v. Bank of America Corp., 2013 WL 3786642 (Dist. of Colo., July 19, 2013) conceded explicitly at page 6 of his decision that "I acknowledge that my view, which turns on the plain language of the definition of "whistleblower," is a minority view at this point, with only the Asadi case in agreement."  It should be noted that in the present litigation, at page 10 of defendants' Memorandum of Law, counsel incorrectly states that the Wagner case involved a violation of securities law.  There is no accuracy to counsel's assertion.  Ms. Wagner was a land appraiser and her claim was filed under the Uniform Standards of Professional Appraisal Practice.

support defendants' position.  The defendants are incorrect.

Although the issues set forth in defendants' motion have been addressed by several

Federal District Courts and one Circuit Court in the three years since the passage of Dodd-Frank,

they are of first impression in the District of New Jersey.

## STATEMENT OF FACTS

Plaintiff incorporates by reference the Declaration of Boris Khazin, submitted herewith,

which summarizes the factual underpinnings of this litigation.  Defendants' moving papers have,

for the second consecutive time, materially mischaracterized and misquoted plaintiff's encounter

with his supervisor, Lule Demmissie, when he initially informed her that the defendants were in

violation of the Break-Point Rule.  Specifically, at no time did defendant Demmissie tell the

plaintiff not to worry about the violation, as defendants' papers inaccurately quote from

plaintiff's Amended Complaint.[4]  The opposite is true.  She retaliated against the plaintiff and

terminated his employment when he persisted in raising this issue.  The violations of the Break-

Point Rule were simply too lucrative to the defendants.

## LEGAL ARGUMENT

### Brief Overview of the Statutes, Rules and Regulations Applicable to Present Motion

Several statutes, industry rules and regulatory notices are central to a discussion of the

issues raised in this litigation and in defendant's motion.  In order to understand properly the

legal issues presented by this matter, these statutes, rules and regulations must be read in

conjunction with one another.  They cannot be read in a vacuum.  This is especially true of the

_____

[4]Defendants made the exact same claim in their moving papers in support of their prior
motion to dismiss plaintiff's Complaint, filed in September, 2013 (prior to the filing of plaintiff's
Amended Complaint).

two statutes central to the present motion, the Sarbanes-Oxley Act and the Dodd-Frank Act, both of which had a goal of enhancing whistleblower incentives and protections.  Indeed, Dodd-Frank expanded and amended some of the whistleblower protections of Sarbanes-Oxley. The rules and regulatory notices that were thereafter promulgated by administrative agencies such as the Securities and Exchange Commission, with their sophisticated expertise and experience, are the force that implements these statutes, a fact that is well-recognized by the drafters of the two statutes.  The statutes, rules and regulations discussed below define the term "whistleblower", protect a whistleblower from retaliatory action, and provide that pre-dispute arbitration agreements are no longer enforceable in a whistleblower context, and that such non-enforceability can be retroactively applied.

As noted, defendants' motion to dismiss raises two closely related issues.  First, they claim that the plaintiff is not a whistleblower because he made his report to the S.E.C. after his termination by the defendants, and as such, should not be afforded protection against retaliation under federal law.  Second, they contend that even if the plaintiff is classified as a whistleblower, the pre-dispute arbitration agreement that he signed with the defendants is fully enforceable and this matter must be heard by an arbitrator.  We disagree strongly, and we will establish below that our position is fully supported by a correct reading of the statutes, rules and regulations extant.

A brief description of the relevant statutes, rules and regulations is set forth below.  Stated plainly, two statutes, Sarbanes-Oxley and Dodd-Frank, and one regulatory rule, SEC Rule 21-F, define the term "whistleblower"; while Dodd-Frank, FINRA Rule 13201 and SEC Regulatory Notice 12-21 address the issue of the non-enforceability of pre-dispute arbitration

agreements.  Not only does the plaintiff meet the definition of a "whistleblower" who is entitled to the protection against retaliation afforded by the statutes and the SEC rule; but also Dodd-Frank and the FINRA and SEC rules support his contention that his pre-dispute arbitration agreement is not enforceable, and that this matter must be adjudicated in federal court, and not at arbitration.

**Statutes** - **Sarbanes-Oxley Act and Dodd-Frank Act - Protection for Whistleblowers**.

In 2002, Congress passed the Sarbanes-Oxley Corporate Criminal Fraud Accountability Act of 2002 (15 U.S.C. 7201, *et seq*.) ("SOX").  This legislation was enacted in the wake of a series of financial scandals that plagued the country at the end of the last century and the beginning of the current century.  The most prominent of these scandals involved Enron, the giant energy conglomerate whose shareholders suffered massive losses.[5]  Although the SOX legislation was broad in its scope, one of its goals was to protect shareholders from losses due to financial misconduct and intentional misfeasance.  To achieve this goal, the legislation encouraged employees to become whistleblowers and to report instances of fraud and violations of securities laws to their employers, when they become aware of them during the course of their employment.  The legislation also mandated corporations to enact enhanced compliance procedures to prevent fraud.  Congress believed that the whistle-blowing provisions of SOX would encourage employees to come forward with relevant  information to ensure and maintain the integrity of the financial securities industry.  One feature of the SOX whistleblowing provisions was that after reporting violations internally, an employee had to exhaust certain administrative remedies before he would be allowed to file a lawsuit.  If successful, a

_____

[5]Another prominent scandal involved the telecommunications giant WorldCom.

whistleblower would be able to recover back pay.

However, the enactment of SOX did not have the full effect and enforcement powers that its drafters had envisioned.  In particular, the whistleblowing procedures set forth in SOX did not have the anticipated regulatory effect that had been hoped for.  Although SOX was an improvement over prior legislation, it did not prevent the financial crisis which developed in late 2007, intensified in 2008, and the effects of which are still felt today in a number of areas.  The near-financial meltdown which occurred in the fall of 2008 led to calls for increased financial regulation of Wall Street and related industries in the financial sector.

In July, 2010, Congress passed a wide-ranging law, the aforementioned Dodd-Frank Act. The scope of this legislation was vast and covered literally hundreds of subjects that affected numerous existing statutes.  One of the statutes affected was SOX.  Dodd-Frank built upon and expanded the whistleblower protections of SOX.  It is of particular relevance to the present litigation that Section 922 of the Dodd-Frank Act amended the whistleblower protections that were set forth in SOX at 18 U.S.C. §1514A.  The new legislation afforded protection to whistleblowers who reported either internally to their companies, or externally, to the Securities and Exchange Commission.  That is, as recognized by Egan, *supra*, any SOX-protected complaint falls within the scope of Dodd-Frank's whistleblower protections, whether the whistleblower reported internally to his company, or externally, to the SEC.  See also, Kramer v. Trans-Lux Corp., 2012 WL 4444820 (D. Ct. 2012); Nollner v. S. Baptist Convention, Inc., 852 F.Supp.2d 986 (M.D. Tenn. 2012); Murray v. UBS Secs., LLC , 2013 WL 2190084 (S.D.N.Y. 2013); Genberg v. Porter, 2013 1222056 (D. Colo. 2013); and Ellington v. Giacoumakis, 2013 WL 5631046 (D. Mass. 2013); all of which held that the definition of a "whistleblower" was

broader with respect to the anti-retaliation section than it was for the rest of the statute.  For example, if a whistleblower employee made an internal report to his company, as envisioned by SOX, and the company then self-reported this disclosure, the whistleblower would be considered a joint provider of the information.  He would be eligible for a whistleblower monetary reward if he chose to pursue one.[6]  While under SOX, a whistleblower could recover only back pay, under the Dodd-Frank amendments, a whistleblower could sue for double the pay that he lost through the corporate retaliation, plus the monetary bounties that were specified by the statute and the SEC.

Dodd-Frank addressed a wide range of issues pertaining to whistleblowers, including the effect of a pre-dispute arbitration agreement and the employee's alleged waiver of rights and remedies thereunder.  Specifically, the Dodd-Frank Act amendments called for the non-enforceability of certain contractual provisions involving the waiver of rights and remedies.  Pursuant to these Dodd-Frank Act amendments, pre-dispute arbitration agreements would not be valid or enforceable under certain circumstances.  Since a key argument in defendants' motion is that the pre-dispute arbitration agreement signed by the parties is binding, it bears emphasis that, to the contrary, the agreement is no longer valid because it has been superceded by this Dodd-Frank Act amendment, 18 U.S.C. §1514A(e)(2)[7].

---

[6]As already noted, the plaintiff, herein, is a whistleblower.  He reported defendants' securities violations internally to his employers, an action required under SOX and which falls within Dodd-Frank's anti-retaliation protection for whistleblowers.  Additionally, he reported externally, to the SEC, which launched an investigation that is still ongoing.  Either act of reporting would have been sufficient to fall within Dodd-Frank's protection to whistleblowers.

[7]As discussed more fully, *infra*, a relatively few courts have addressed the issue of the retroactivity of pre-dispute arbitration agreements.  These courts are virtually split on this issue.  However, it is noted that the few courts that have ruled that Dodd-Frank's ban on the

With respect to defendants' motion, the key provisions of Dodd-Frank are 15 USC §78u-6(a)(6), which defines a whistleblower; and 15 U.S.C. §78u-6(h), entitled the "Protection of Whistleblowers", which explains the scope of whistleblower protection.  Regarding the former, the plaintiff herein reported defendants' violation of the Break-Point Rule to the SEC.  He is therefore a whistleblower, as defined by Dodd-Frank.  Contrary to defendants' position, there is nothing in the statute that required him to make his report prior to his firing.[8]  However, even if he had not reported this violation to the SEC, he would still be a whistleblower under the second provision, the aforementioned 15 U,S.C. §78u-6(h).  Particularly important is 15 U.S.C. §78u-6(h)(1)(A)(iii), which, in pertinent part, states:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower -
>
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C., *et seq*.), the Securities Exchange Act of 1934 (15 U.S.C. 78a *et seq*.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of Title 18, and any other law, rule, or regulation subject to the

---

enforceability of pre-dispute arbitration agreements cannot be applied retroactively, made their rulings before the enactment of FINRA Rule 13201 and SEC Regulatory Notice 12-21, both of which are discussed *infra*, and which state that Dodd-Frank's ban on the enforceability of pre-dispute arbitration agreements **can be applied retroactively** (emphasis added).

[8]This Brief will demonstrate the absurd conclusions that would result from such a requirement.  A company in violation of particular securities laws could simply pre-emptively fire an employee that they suspected might make such a report.  Defendants' unsupported contention would blow a wide hole through whistleblower protections.  Defendants cannot offer any evidence that this was ever the intent of Congress.  Indeed, the Dodd-Frank amendments to SOX 18 U.S.C. 1514A expanded the protections against retaliation given to whistleblowers.  It did not decrease those protections.  Congress never envisioned that the issue of a retaliation against a whistleblower would be decided by an employer's malevolent race to terminate him.

jurisdiction of the Commission.[9]

## SEC Rule 21-F - Protection for Whistleblowers

After Congress passed the Dodd-Frank Act, it delegated authority to a specialized executive agency, the Securities and Exchange Commission, to provide rules to implement this legislation.  SEC Rule 21-F (17 C.F.R. §240.21F-9(a)) represents the SEC's final rule on Dodd-Frank   Before issuing this rule, the SEC held extensive hearings on this matter.  Thereafter, on May 21, 2011, it issued Rule 21-F which provided further rules and regulations for the whistleblower provisions of the Dodd-Frank Act.  Pursuant to this rule, if a whistleblower provides "information related[d] to a possible violation of federal securities laws including any rules or regulations thereunder" that results in penalties or recoveries by the SEC or agencies, the whistleblower is eligible to recover from 10 to 30 percent of the penalty or recovery.  This Rule references SOX and provides that Dodd-Frank does provide a cause of action for whistleblower employees who report to the SEC or make disclosures that are required or protected under SOX, such as internal reporting of wrongdoing.  Beyond this, the bulk of the rule reemphasized the liberal protections against retaliation that are afforded to a whistleblower.  This rule accurately reflected the intent of Congress to widen protection to whistleblowers.

## Rule - FINRA -Rule 13201 (amended May 21, 2012) -Pre-Dispute Arbitration Agreements

As noted, Section 922 of the Dodd Frank Act amended the whistleblower provision in section 806 of SOX to state that pre-dispute arbitration agreements that encompass a dispute

---

[9]As can be seen, the protection afforded to a Dodd-Frank whistleblower is quite broad. Plaintiff's internal reporting to the defendant corporations of their violation of the Break Point Rule was a protected activity under Sarbanes-Oxley, and enforceable under Dodd-Frank. However, we repeat that the plaintiff also reported to the SEC.  In the <u>Asadi</u> case, relied upon almost exclusively by the defendants, the plaintiff did not report to the SEC.

arising under that section are invalid and unenforceable.  In recognition of this Dodd-Frank amendment, the Financial Industry Regulatory Authority (FINRA) amended Rule 13201 of the Code of Arbitration Procedure for Industry Disputes to state that "a dispute arising under a whistleblower statute that prohibits the use of pre-dispute arbitration agreements is not required to be arbitrated under the Code."  The amendment goes on to state that "[s]uch a dispute may be arbitrated only if the parties have agreed to arbitrate it after the dispute arose."

**Regulatory Notice - SEC Regulatory Notice 12-21 (May 21, 2012) - Pre-Dispute Agreements**

On May 21, 2012, the Securities and Exchange Commission approved FINRA's amendment to Rule 13201 through Regulatory Notice 12-21.

**Dodd-Frank Act - Pre-Dispute Arbitration Agreements**

Pursuant to §1514A(e)(2) of the Dodd-Frank Act, pre-dispute arbitration agreements that would encompass causes of action now covered by Dodd-Frank (such as the one signed herein by the plaintiff) are specifically prohibited, as are other waivers of rights noted in the Sarbanes-Oxley Act of 2002 ("SOX").  That is, Dodd-Frank amended and expanded the whistleblower protections previously set forth in SOX by clearly stating that pre-dispute arbitration statements do not apply.  As will be discussed further, *infra*, some courts have given retroactive application to the Dodd-Frank ban on pre-dispute arbitration agreements.[10]  Further, as noted, any remaining doubts about the non-enforceability of such pre-dispute arbitration agreements have now been clarified by the aforementioned amendment to FINRA Rule 13201 and the Securities and

---

[10]Pezza v. Investors Capital Corp., 767 F.Supp.2d 225, 234 (D.Mass. 2011)(Dodd-Frank's amendment of the whistleblower protections set forth in SOX by banning pre-dispute arbitration agreements applies to conduct that arose prior to its enactment.)

Exchange Commission's Regulatory Notice 12-21.

Defendant's moving papers fail to address these issues, namely the Dodd Frank Act amendments to SOX, and especially, the clarity of the amendment to FINRA Rule 13201 and the SEC's Regulatory Notice 12-21 with regard to the non-enforceability of pre-dispute arbitration agreements.

**POINT ONE**

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED. PLAINTIFF'S AMENDED COMPLAINT PUTS THE DEFENDANTS ON SUFFICIENT NOTICE OF HIS CLAIM TO BE A WHISTLE-BLOWER UNDER FEDERAL LAW. MOREOVER, DEFENDANTS HAVE NOT OFFERED ANY PROOF TO SUPPORT THEIR CONTENTION THAT A WHISTLEBLOWER WOULD SOMEHOW LOSE HIS STATUS AS A WHISTLEBLOWER IF HIS EMPLOYER TOOK PREEMPTIVE, RETALIATORY ACTION AGAINST HIM.  SUCH AN UNSUPPORTED READING OF THE STATUTE WAS CLEARLY NOT THE INTENT OF CONGRESS WHEN IT EXPANDED WHISTLEBLOWER PROTECTIONS IN DODD-FRANK.**

A defendant may file a Rule 12(b)(6) motion to dismiss for lack of subject matter jurisdiction or for failure to state an actionable claim.  In either event, the motion must be filed before the defendant files a responsive pleading to the plaintiff's complaint.  The motion itself is not a responsive pleading.  Shane v. Fauver, 213 F.3 113, 115 (Third Cir. 2000).

Historically, courts have viewed Rule 12(b)(6) motions for failure to state a claim with disfavor.  Kessler Institute for Rehabilitation, Inc. v. Mayor and Council of the Borough of Essex Fells, 876 F. Supp. 641, 622 (D.N.J. 1995).  The burden is on the defendant to show conclusively that, as a matter of law, there are no circumstances in which  plaintiff's cause of action can be proved.  Baraka v. McGreevey, 481 F.3 187, 195 (Third Cir. 2007 ); Pygatt v. Painters' Local

-13-

No. 277, International Brotherhood of Painters & Allied Trades, 763 F.Supp. 1301, 1307 (D.N.J. 1991).  This is a difficult standard to meet.  The United States Supreme Court has explained that when a court considers a motion to dismiss under Rule 12(b)(6), the plaintiff's Complaint must be liberally construed in the plaintiff's favor, and all well-pleaded facts must be taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  That is, the court must accept all well-pleaded facts as true, and view them in a light most favorable to the plaintiff.  Id.  If the facts are well-pled, the court must presume that they are true, even if it has some doubt.  After accepting the truth of these facts, the court must then determine if the facts can give rise to a claim for relief.  Id.  At all times, the plaintiff's pleadings must be sufficient.  The plaintiff cannot plead facts that are meager or insufficient or make conclusory statements.  Id.

In the case at bar, the defendants have claimed that the plaintiff has failed to state a cause of action in its Amended Complaint  Specifically, they claim that plaintiff cannot be a whistleblower because his reporting to the Securities and Exchange Commission occurred in the period following his termination.  As has been explained, such reasoning turns Congress' intent to increase protection to whistleblowers on its head and would bar a significant class of potential securities' fraud whistleblowers from any legal protection.   The defendants provide no legal authority to support their contention.  Indeed, the District of Massachusetts Court in Ellington, decided three months after Asadi, specifically rejected such reasoning.  The defendants' mechanical interpretation of the statute would lead to absurd results clearly not envisioned by Congress.  When the Dodd-Frank whistleblower protections were passed in 2010, eight years after the protections offered by Sarbanes-Oxley, the clear intent of Congress was to increase protection to whistleblowers.  Defendants' unsupported and illogical interpretation would do the

-14-

precise opposite - - it would decimate whistleblower protection and create an unwarranted and

uncalled-for gap that could be exploited easily  and preemptively by an employer who suspected

that an employee might contact the S.E.C.

**POINT TWO**

**PLAINTIFF MEETS THE STATUTORY REQUIREMENTS
OF A WHISTLE-BLOWER, AS DEFINED BY THE DODD-
FRANK ACT.  THUS, HE IS ELIGIBLE TO RECEIVE THE
PROTECTION  OF THE ANTI-RETALIATORY
PROVISIONS OF THAT STATUTE.  DEFENDANTS'
CONTENTION THAT THE PLAINTIFF IS NOT A
WHISTLEBLOWER, AND THAT THEREFORE, HIS
COMPLAINT MUST BE DISMISSED, SHOULD BE
REJECTED BY THIS COURT.**

18 U.S.C. §1514A of the Sarbanes-Oxley Act provides protection for whistle-blowers.  In

pertinent part, section 1514A(a)(1)( C) provides that:

> No company with a class of securities registered under section 12 of the
> Securities Exchange Act of 1934 (15 U.S.C. 78*l*)... may discharge, demote,
> suspend, threaten, harass, or in any other manner discriminate against an
> employee in the terms and conditions of employment because of any lawful act
> done by the employee - - (1) to provide information, cause information to be
> provided, or otherwise assist in any investigation regarding any conduct which the
> employee reasonably believes constitutes a violation of section 1341, 1343, 1344,
> or 1348, any rule or regulation of the Securities and Exchange Commission, or
> any other provision of Federal law relating to fraud against shareholders, when
> the information or assistance is provided to or the investigation is conducted by
>
> (C) a person with supervisory authority over the employee (or such other person working
> for the employer who has the authority to investigate, discover, or terminate
> misconduct);....

The protection afforded by this section of the Sarbanes-Oxley Act has been specifically

incorporated into and embraced by the Dodd-Frank Act, which provides whistleblowing

employees with a private cause of action against their employers if they have suffered retaliation

-15-

for reporting violations to the SEC, cooperating with an SEC investigation, or "making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002." Section 78u-6(h)(1)(A). Dodd-Frank's embrace of subsection (C), above, shows that actual external reporting to the SEC is not required of a whistleblower, even though it occurred in the instant case, anyway. A whistleblower can be afforded Dodd-Frank protection against retaliation by reporting internally within the company to a person who has supervisory authority over him, and who has the additional authority to investigate the matter in question.

In the present litigation, the plaintiff falls within the whistleblower protection articulated in the Dodd-Frank Act. He reported defendants' violation of the Break-Point Rule both internally, to the defendants, and externally, to the SEC. The defendants terminated his employment after he made these disclosures which were protected by Section 806 of Sox (18 U.S.C. 1514A). As the defendants are well aware, the SEC has an ongoing investigation into this matter. Even using the more restrictive definition of a whistleblower adopted by the Asadi court, as a result of his explicit reporting to the SEC, the plaintiff herein is a whistleblower who is protected against retaliatory acts by the defendants. As detailed in plaintiff's Declaration, he uncovered evidence of the improper inclusion of retail class funds in certain AmeriVest products and, pursuant to Dodd-Frank (which expanded SOX's retaliatory protection to whistleblowers), brought this to the attention of his immediate supervisor, defendant Demmissie. Indeed, he did so more than once. However, despite plaintiff's continuing attempts to halt this ongoing violation of the law, which was quite lucrative to the defendants, he was directed by Demmissie to drop all mention of the subject and to take no further action. He was explicitly ordered never again to raise this subject matter in written correspondence. Thereupon, plaintiff's range of

authority and responsibility was decreased.  His employment was terminated a short time thereafter.

Plaintiff's termination in August, 2012 was directly related to his prior efforts to correct violations, beginning in the spring of 2012, and re-visited thereafter.  The plaintiff, who brought evidence of securities law violations to his supervisor, but was told to drop all mention of the violations, is fully entitled to the protections afforded by the Dodd-Frank Act.

As noted, plaintiff's status as a whistleblower who is eligible for the whistleblower protections afforded by Dodd-Frank is supported by six of the eight federal courts that have looked at this issue.  Plaintiff has support in the case law to whistleblower protection both for his internal reporting to his supervisor and his external reporting to the SEC.  Additionally, one of plaintiff's supporting cases is directly on point and holds that a whistleblower who makes a post-termination report to the SEC qualifies as a whistleblower under Dodd-Frank.   Finally, plaintiff's position is further supported by the whistleblower anti-retaliation protection rule that the SEC issued in 2011, following the passage of Dodd-Frank and codified at 17 C.F.R. §240.21F-2(b)(1).

## POINT THREE

**DEFENDANTS' CONTENTION THAT PLAINTIFF IS NOT A WHISTLEBLOWER BECAUSE HE DID NOT REPORT TO THE SECURITIES AND EXCHANGE COMMISSION UNTIL AFTER HE WAS TERMINATED BY THE DEFENDANTS IS WITHOUT MERIT.  THE DEFENDANTS RETALIATED AGAINST THE PLAINTIFF BY TERMINATING HIS EMPLOYMENT AFTER HE HAD MADE AN INTERNAL REPORT OF AN IMPORTANT SECURITIES VIOLATION TO HIS SUPERVISOR. PLAINTIFF IS CLEARLY AN INTENDED  BENEFICIARY OF THE PROTECTION AGAINST RETALIATION THAT DODD FRANK AFFORDS TO WHISTLEBLOWERS.**

Defendants argue that as a matter of law, plaintiff cannot be considered a whistleblower, as he reported defendants' securities' law violations to the Securities and Exchange Commission after his termination and not before.  The defendants offer no legal authority for such a mechanical conclusion.  Indeed, Ellington v. Giacoumakis, 2013 WL 5631046 (D. Mass. 2013), decided three months after Asadi, has rejected such reasoning.  Aside from being logically flawed, defendants' contention turns the legislative intent of Dodd-Frank's increased protection to whistleblowers on its head.  By any reasonable interpretation, plaintiff was a whistleblower who reported material violations of the Break Point Rule on more than one occasion to his superiors, and thereafter was threatened and ultimately terminated by the defendants as a direct result for his whistleblowing activities.  Then, he contacted and made a report to the Securities and Exchange Commission.  The plaintiff should be afforded the full protection that the Dodd Frank law gives to whistleblowers who are victims of retaliation.

Defendants' argue that an employee who reports internally, gets terminated in retaliation, and then reports to the SEC does not receive any whistleblowing protections under the Dodd Frank statute.  Such reasoning turns the statute on its head and eviscerates the very protection that the Dodd Frank amendments to Sarbanes Oxley were meant to achieve.  Taking defendants' reasoning to its logical conclusion, a defendant company that committed a securities law violation could preemptively and permissibly retaliate against a whistleblowing employee by terminating that employee before he has had a chance to make an external report of the violation to the SEC.  Such a bizarre scenario was surely not the intention of Congress when it enacted the Dodd Frank whistleblower provisions.  Adopting defendants' position would put control of the reporting process in the hands of the corporate wrongdoers.  Indeed, by design and intent, Dodd

Frank amended and expanded the whistleblower protections afforded to an

employee/whistleblower under Sarbanes Oxley, and increased the penalties against

whistleblower retaliation.

Tellingly, the defendants' moving papers do not offer a single citation to a statute that

requires a whistleblower's contacts with the Securities and Exchange Commission to occur prior

to his termination.  Nor have we found any such proposition in the statutes. As noted,

defendants' disingenuous interpretation would greatly diminish the protections offered to a

whistleblower.  While SOX encouraged employees to report violations internally, Dodd Frank

expanded that right by permitting a plaintiff to report externally, to the SEC.  It was always

Congress' intent to give broad protection to an employee/whistleblower who would step forward

and report violations of securities law to the S.E.C.  Further, nothing in the statute nor its

legislative history shows an intent by Congress to limit whistleblower protection.

### POINT FOUR

**AS AN ACADEMIC POINT, THE FIFTH CIRCUIT'S RESTRICTIVE
INTERPRETATION OF THE TERM "WHISTLEBLOWER"
IN SECTION 78u-6 (h)(l) (A) (iii) SHOULD NOT BE
ADOPTED BY THIS COURT.  HOWEVER, IT DOES NOT
MATTER IN THE INSTANT CASE BECAUSE PLAINTIFF
IS WITHIN THE FIFTH CIRCUIT'S INTERPRETATION, ANYWAY.**

Defendants' moving papers give a highly distorted view that the whistleblower protection

law is settled and uncontested.  We disagree strongly.[11]  In Asadi, *supr*a, the Fifth Circuit held

---

[11]Defendants incorrectly contend, without any support in the case law, that this Court is
obligated to adopt the strictest and most restrictive definition of a whistleblower, as defined in
the Asadi case.  Defendants fail to offer any support for such a position that the Asadi definition
is the unchallenged standard, and the plaintiff vigorously disptutes such a contention, which, as
has been demonstrated throughout this brief, is unsupported by a number of District Court
decisions.

that the whistleblower protection provisions of Dodd-Frank, which create a private cause of action, can apply only to individuals who provide information to the Securities and Exchange Commission regarding a possible violation of securities law.  The Court found that, if an individual only reported the violation internally, as he was required to do so under Sarbanes-Oxley, he could not be afforded the whistleblower protections afforded by Dodd-Frank.  The court found that to be considered a whistleblower under Dodd-Frank, the individual was required to contact the Securities and Exchange Commission.  In reaching this decision, the Court employed a textual analysis of the statute and, unlike several District Courts (Southern District of New York in Egan; District of Connecticut in Kramer; Middle District of Tennessee in Nollner; Southern District of New York in Murray; District of Colorado in Genberg; and District of Massachusetts in Ellington); found no conflict or tension between the statutory definition of a whistleblower found in Section 78u-6(a)(6) and the retaliatory provisions that are set forth in Section 78u-6(h)(1)(A).  The Asadi court held that since plaintiff Asadi only reported the violations internally, and not to the Securities and Exchange Commission, he was not a whistleblower as defined by the statute, and could not be afforded the anti-retaliatory provisions of the statute.

In reaching its decision, the Asadi Court made no mention of SEC Rule 21F, the final rule implemented by the Securities and Exchange Commission regarding Dodd-Frank whistleblowers.  That rule, as noted *infra*, recognizes that Dodd-Frank provides a right to whistleblower protection not only for individuals who reported wrongdoing to the SEC, but also to employees who made disclosures that were required or protected under the Sarbanes-Oxley Act.  Nor did the Asadi Court discuss the decisions of the District Courts that had previously

recognized Dodd-Frank whistleblower protection that went beyond certain narrow statutory language.  These cases have been cited, *supra*.[12]  Instead, it looked at the statutory language of Dodd-Frank Section 78u-6(a)(6), which defined a whistleblower in a near vaccum, and made little attempt to resolve the tension in Dodd-Frank between the definition of a whistleblower and the protection against retaliation set forth in Section 78u-6(h)(1)(A), which specifically provides protection against retaliation for acts protected under Sarbanes-Oxley. The <u>Asadi</u> court gave scant acknowledgment to the District Courts, cited above, that recognized the tension between Dodd-Frank's definition of a whistleblower and the protections given to a whistleblower.

Defendants' motion must fail for the following reasons:  First, the plaintiff herein, is a representative of the intended class of employee-whistleblowers that the Dodd-Frank statute, and its predecessor and forerunner, the Sarbanes-Oxley Act, intended to protect.  Due to his employment, the plaintiff was of the class of people most likely to uncover and to comprehend evidence of wrongdoing and violation of securities law, and to report such wrongdoing.

Second, the violation of securities law that the plaintiff reported, both internally to his supervisor, and later, externally, to the Securities and Exchange Commission, was the type of violation that the statutes intended to uncover, and to which Congress wanted society be protected against.

Third, the defendants, both the corporate and the individual defendants, were of the same

-----

[12]In <u>Egan</u>, *supra*, the S.D.N.Y. gave a more expansive definition of a Dodd-Frank whistleblower that went beyond the strict language of the statute, as did the Middle District of Tennessee, in <u>Nollner v. Southern Baptist Convention</u>, *supra*. The Second Circuit in <u>Kramer</u>, *supra*, ruled that whistleblowers who report internally can still sue under Dodd-Frank's anti-retaliatory provisions, which incorporates actions that are protected under Sarbanes-Oxley.  The <u>Murray</u>, <u>Genberg</u>, and <u>Ellington</u> courts similarly gave broad protection to whistleblowers.

class that the statutes intended to regulate so as to prevent violations of securities law.

Finally, accepting defendants' flawed reasoning would defeat the entire legislative intent of Congress to extend protection to whistleblowers and would lead to an absurd outcome.  It would  create an unintended, large loophole in whistleblower protection, and encourage employers to take immediate, preemptive retaliatory action against any employee who they suspected might potentially raise the issue of a violation of a securities law.  Following defendants' reasoning, an employer, who had preemptively terminated an employee, would now automatically escape the reach of the statutes, simply because the employee had been terminated before he could make an external report.  Nor is there anything in the statutes that  states that a whistleblower would lose such status at the moment of his termination, a position that the defendants illogically advance.

The present case before this Court is clearly distinguishable from Asadi, as plaintiff Boris Khazin reported defendants' violations of the Break-Point Rule externally, to the Securities and Exchange Commission, as well as internally to the defendant corporations.  The Asadi plaintiff reported only internally.  Nonetheless, we urge on behalf of all plaintiffs who are similarly victimized that Asadi should not be embraced in the Third Circuit.

## POINT FIVE

**DEFENDANTS' ALTERNATIVE REQUEST TO COMPEL ARBITRATION OF THE DODD-FRANK CLAIM SHOULD BE DENIED.  SECTION 1514A(e)(2) OF THE DODD FRANK ACT, WHICH AMENDED SOX, SPECIFICALLY PROHIBITS THE ENFORCEMENT OF PRE-DISPUTE ARBITRATION AGREEMENTS.  THE RETALIATORY CONDUCT UNDERTAKEN AGAINST THE PLAINTIFF OCCURRED MORE THAN TWO YEARS AFTER THE PASSAGE OF THE DODD FRANK ACT.  AS THE ACT ARTICULATES THE CURRENT, EXISTING LAW IN THIS**

**AREA, AND PROHIBITS THE ENFORCEMENT OF PRE-DISPUTE ARBITRATION AGREEMENTS, RETROACTIVE EFFECT SHOULD BE GIVE TO ITS PRE-DISPUTE ARBITRATION AGREEMENT BAN. ACCORDINGLY, THE PRE-DISPUTE ARBITRATION AGREEMENT THAT THE PARTIES SIGNED IN 2006 SHOULD NOT BE ENFORCED AS TO THE FACT PATTERN OF THIS ACTION.**

Among other developments, the Dodd Frank Act of 2010 amended and expanded the whistleblower protection that had been set forth in SOX at Section 1514A.  Specifically, Dodd-Frank §1514A(e)(2) widened the protection that would be given to whistleblowers with regard to two central issues: (1) prior waivers and remedies made by a litigant; and (2) pre-dispute arbitration agreements.  In pertinent part, §1514A(e)(2), entitled "Predispute Arbitration Agreements" states that: "No predispute arbitration agreement shall be valid or enforceable if the agreement requires arbitration of a dispute arising under this section." The Act did not specifically address  retroactivity to arbitration agreements that were signed before its enactment, but then again, it appears retroactive by its plain language.  After all, it does not say that there shall be no "future" arbitration agreements drafted and signed pertaining to Dodd-Frank claims. Rather, the plain reading is that if an existing arbitration agreement would encompass claims that Dodd-Frank addresses, it shall not be "valid or enforceable".  Hence, the plaintiff  is  no longer subject to the pre-dispute arbitration agreement executed in 2006.

Indisputedly, the retaliatory conduct alleged herein occurred more than two years after the enactment of the Dodd Frank Act.  Although the parties signed a pre-dispute arbitration agreement in 2006, four years before the statute's enactment, under the theory of statutory retroactivity, Dodd Frank's ban against pre-dispute arbitration agreements should be fully enforced against the defendants.  In advocating this position, the plaintiff is in line with several

-23-

of the District Courts that have ruled in support of the retroactivity of §1514A(e)(2)'s ban against the enforcement of predispute arbitration agreements and have refused to enforce those agreements.

The most prominent cases supporting a retroactive application of Dodd Frank are <u>Pezza v. Investors Capital Corporation</u>, 767 F.Supp.2d 225 (D. Mass. 2011) and <u>Wong v. CKX, Inc.</u>, 890 F. Supp.2d 411 (S.D.N.Y. 2012).  It is acknowledged that there is a split of opinion among the small number of District Courts that have looked at the issue of Dodd Frank's ban against the enforcement of pre-dispute arbitration agreements.  Several courts have not given retroactive effect to the statute.  See, <u>Henderson v. Masco Framing Corporation</u>, 2011WL3022535 (D. Nev. 2011); <u>Taylor v. Fannie Mae, *et al*</u>., 839F. Supp.2d 259 (D.D.C. 2012).  However, the facts in the case at bar can be distinguished from those few cases where the court did not allow the retroactive application of Dodd Frank's ban.  As noted *infra*, regulatory developments which occurred in May, 2012, three months before plaintiff's cause of action arose, further support plaintiff's position that the pre-dispute arbitration agreement cannot be enforced.  Respectively, these developments are the amendment to FINRA Rule 13201, and the SEC's approval of this rule pursuant to Regulatory Notice 12-21.  None of the cases finding against retroactivity discuss the FINRA rule amendment or the SEC regulatory notice, both of which went into effect after those few cases had been brought.

As the issue of the retroactive application of §1514A(e)(2)'s ban against the enforcement of pre-dispute arbitration agreements is apparently one of first impression for New Jersey courts, we emphasize the statute and its temporal reach.  In determining whether a valid obligation to arbitrate exists, a court must examine whether the arbitration agreement has been overridden by

a contrary Congressional command.  <u>Wong</u>, *supra* at page 421.  If the court makes this

determination, it must next examine whether the statute at issue can be retroactively applied.  If

the statute is unclear or silent about retroactivity, and the court cannot draw a conclusion about

the statute's temporal reach through the application of its normal rules of construction, it must

ask whether applying the statute retroactively to a party would affect that party's rights,

liabilities or duties in a substantive manner.  If the court concludes that retroactive application

would have a substantive effect, then the presumption against retroactivity would hold and the

statute would not be applied.  <u>Fernandez-Vargas v. Gonzales</u>, 548 U.S. 30, 37-38 (2006).

However, if the court's examination reveals that retroactive application of the statute would not

take away any substantive right, but would merely change the tribunal that decides the case, then

retroactive application of the statute would be appropriate.  This is because the retroactive

application of the statute would speak to the power of the court rather than to the rights or

obligations of the parties.  <u>Republic National Bank of Miami v. United States</u>, 506 U.S. 80, 100,

113 (1992).

 In the case at bar, this Court should apply retroactively §1514A(e)(2) of the Dodd Frank

Act, and ban enforcement of the pre-dispute arbitration agreement that the parties signed in

2006.  Enforcing the ban would in no way impact the defendant's substantive rights.  It would

simply change the forum in which plaintiff's various claims would be heard.  That said, we

believe that the retroactivity of the statute's anti-arbitration provision is clear on its face,

anyway.  As aforesaid, the provision does not limit itself to arbitration agreements that may be

prepared and signed in the *future*.

**<u>POINT SIX</u>**

**THE RECENT AMENDMENT TO FINRA RULE 13201, AND THE SECURITIES AND EXCHANGE COMMISSION'S REGULATORY NOTICE 12-21 WHICH APPROVES THE FINRA RULE CHANGE, PROVIDE FURTHER SUPPORT THAT A DISPUTE WHICH ARISES UNDER A WHISTLEBLOWER STATUTE THAT PROHIBITS THE USE OF PRE-DISPUTE ARBITRATION AGREEMENTS IS NOT REQUIRED TO BE ARBITRATED UNDER THE CODE.  PLAINTIFF'S DISPUTE WITH THE DEFENDANTS ARISES UNDER A WHISTLEBLOWER STATUTE.  ACCORDINGLY, THE ARBITRATION AGREEMENT CANNOT BE ENFORCED ABSENT THE PLAINTIFF'S SPECIFIC APPROVAL.**

In the case at bar, it is unquestioned that plaintiff's claim against the defendants arises under Section 922 of the Dodd Frank Act, which amended the whistleblower provisions set forth in Section 806 of the Sarbanes-Oxley Act of 2002.  On more than one occasion, the plaintiff reported evidence of a violation of the Break-Point Rule to his supervisor (defendant Demmissie), who ultimately demanded that the plaintiff never raise the subject with her again.  Thereafter, defendant Demisse retaliated against the plaintiff by accusing him of being untruthful about a long-ago paid invoice that the plaintiff had no responsibility for.  Within several weeks, her retaliatory action led to plaintiff's dismissal by the defendant corporations.  Defendants' retaliatory actions against the plaintiff occurred in August, 2012.  Under the Dodd Frank Act amendment, claims arising under the whistleblower provisions of the statute are not subject to pre-dispute agreements that compel arbitration.

As made explicit in Dodd-Frank, and reinforced by a subsequent rule amendment promulgated in May, 2012 by the Financial Industry Regulatory Authority ("FINRA"), a rule which was specifically endorsed by the Securities and Exchange Commission ("SEC") in a concurrent Regulatory Notice, pre-dispute arbitration agreements  for disputes that arise under

whistleblower statutes *are no longer enforceable*.  As has been discussed, *supra*, even before the aforementioned FINRA and SEC rules were promulgated, several District Courts gave retroactive application to Dodd-Frank's ban on the enforceability of pre-dispute arbitration agreements.  It merits emphasis that with respect to the present litigation,  the new FINRA rule, and the SEC Regulatory Notice, were established, and were functioning, months before plaintiff's termination.  Accordingly, plaintiff's federal question claims should be heard before this Court, rather than before an arbitrator, as the pre-dispute arbitration agreement that he signed with the defendants is not enforceable.

      As has been shown, there is existing case law which fully supports plaintiff's position that the pre-dispute arbitration agreement that he signed with the defendants in 2006 cannot be enforced against him.  Plaintiff's position that he cannot be compelled to arbitrate the present dispute is further strengthened by the aforementioned rule amendments and regulatory notices that have been issued by the leading regulatory bodies in the financial services industry - FINRA and the SEC.  As has been discussed, the amendment to FINRA Rule 13201 states that "a dispute arising under a whistleblower statute that prohibits the use of pre-dispute arbitration agreements is not required to be arbitrated under the Code."  Thereafter, pursuant to Regulatory Notice 12-21, this amendment was explicitly approved by the Securities and Exchange Commission. Pursuant to the principle articulated in <u>Chevron</u>, *supra*, due to the SEC's expertise, deference should be given to the their decision and a court should not attempt to disturb it.  Considerable weight should be accorded to an executive agency's construction of a statutory scheme that it is entrusted to administer.  <u>Ibid</u>. at 844.

      Plaintiff's claim against the defendants falls precisely within the category of claims that

the Rule addresses.  Moreover, the retaliatory actions perpetuated by the defendants occurred after both the FINRA rule went into effect and the SEC regulatory notice was published throughout the industry.  These developments provide additional levels of support for the conclusion that plaintiff's claims against the defendant cannot be governed by the pre-dispute arbitration agreement that was signed in 2006.

## CONCLUSION

On the basis of the foregoing, it is respectfully submitted that defendants' motion should be denied in its entirety.

Respectfully submitted,

BIEBELBERG & MARTIN

By:   _/s/ Keith N. Biebelberg_

KEITH N. BIEBELBERG