## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BORIS KHAZIN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-4149 (SDW)(MCA) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| TD AMERITRADE HOLDING | : | |
| CORPORATION, TD AMERITRADE, | : | |
| INC., AMERIVEST INVESTMENT | : | March 11, 2014 |
| MANAGEMENT COMPANY and LULE | : | |
| DEMMISSIE, individually, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WIGENTON**, District Judge.

Before the Court is T.D. Ameritrade Holding Corporation, T.D. Ameritrade, Inc. ("T.D. Ameritrade"), and Amerivest Investment Management Company's ("AmeriVest") (collectively "Defendants") Motion to Dismiss the Amended Complaint, or To Dismiss the Action and Compel Arbitration pursuant to Fed. R. Civ. P. 12(b)(6).[1]  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons discussed below, Defendants' Motion to Dismiss and Compel Arbitration is **GRANTED**.

**FACTUAL HISTORY**

From 2006 until August 12, 2012, Defendants employed Boris Khazin ("Plaintiff") in various capacities.  (Am. Compl. ¶ 15.)  As an investment oversight officer, Plaintiff's responsibilities included performing due diligence on financial products to be offered to

---

[1] Also before the Court is Defendants' first Motion to Dismiss the Complaint.  In light of Defendants' second Motion to Dismiss which addresses the Amended Complaint, Defendant's first Motion to Dismiss is denied as moot.

customers. (Id. ¶ 48.)   In or around April 2012, Plaintiff "became aware that a particular AmeriVest financial product . . . was not in compliance with relevant securities regulations." (Id. ¶ 52.)  In reviewing the funds, Plaintiff identified that the product was improperly priced and would result in customers paying additional overhead for the product.  (Id. ¶¶ 19, 29-30.)

Plaintiff reported the noncompliance to his supervisor, Lule Demmissie ("Demmissie"), and recommended making a corrective pricing change.  (Id. ¶ 30.)  Demmissie instructed Plaintiff to conduct a "revenue impact" analysis for the product.  (Id. ¶¶ 30-31.)  Plaintiff's analysis revealed that instituting a corrective change would save customers $2,000,000, but it would result in Defendants losing $1,150,000 in revenues.  (Id. ¶ 32.)  Additionally, the corrective change would cause one of Demmissie's divisions to "suffer an adverse impact to its Profit & Loss balance sheet."  (Id. ¶ 33.)  After reviewing Plaintiff's analysis, Demmissie instructed Plaintiff to not make corrective changes and to stop sending her e-mails regarding this matter.  (Id. ¶ 33.)  In June 2012, Plaintiff approached Demmissie again to recommend the corrective changes to the improperly priced product.  (Id. ¶ 35.)  Demmissie informed Plaintiff that the changes could not be undertaken.  (Id.)

In mid-July 2012, Demmissie asked Plaintiff about an old quarterly invoice that was previously paid but had been sent by a new third-party provider.  (Id. ¶ 36.)  Demmissie accused Plaintiff of being untruthful and evasive despite Plaintiff's limited role in handling invoices.  (Id. ¶¶ 36-40.)  It was later discovered that the invoice payments were up-to-date.  (Id. ¶ 40.)

On or about August 10, 2012, Plaintiff was asked to meet with a Relationship Manager of the Human Resources Department who discussed the third-party provider's invoice with Plaintiff.  (Id. ¶ 42.)  At the end of the meeting, Plaintiff was placed on administrative leave.  (Id. ¶ 43.)  On or about August 14, 2012, Plaintiff was told that "he could no longer be trusted by

upper management" and he was immediately terminated.  (Id. ¶¶ 43-44.)  Plaintiff claims he reported Defendants' violations to the Securities and Exchange Commission ("SEC") and such violations are being investigated.  (Id. ¶ 68.)

**PROCEDURAL HISTORY**

On or about January 18, 2013, Plaintiff filed a Second Amended Complaint in the Superior Court of New Jersey, alleging wrongful termination as retaliation for whistleblowing, state law claims, common law claims, and violations of the Dodd Frank Act.  (Id. ¶¶ 7-8.)  On July 1, 2013, the Honorable Mary K. Costell, J.S.C. dismissed the Dodd Frank Act claim without prejudice for lack of subject matter jurisdiction and compelled arbitration on the state and common law claims.  (Id. ¶ 10.)

On July 8, 2013, Plaintiff commenced the instant action alleging a violation of the whistleblower protection provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act").  (Id. ¶ 11.)  Defendants filed a Motion to Dismiss on September 13, 2013 and Khazin filed an Amended Complaint on September 25, 2013.  (Id. ¶¶ 12-13.)  In response to the Amended Complaint, Defendants filed a second Motion to Dismiss on October 9, 2013.  (Dkt. 15.)

**LEGAL STANDARD**

***Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)***

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . . Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

citations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "'requires a 'showing' rather than a blanket assertion of an entitlement to relief'" (quoting Twombly, 550 U.S. at 555 n.3)).

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2). Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (third alteration in original) (internal citations omitted) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 234 (alterations in original) (quoting Twombly, 550 U.S. at 556).

4

In <u>Fowler v. UPMC Shadyside</u>, the Third Circuit directed district courts to conduct a two-part analysis.  578 F.3d 203, 210 (3d Cir. 2009).  First, the court must separate the factual elements from the legal conclusions.  <u>Id.</u>  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  <u>Id.</u> at 210-11 (citing <u>Iqbal</u>, 556 U.S. at 678).  Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  <u>Id.</u> at 211 (quoting <u>Iqbal</u>, 566 U.S. at 679).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."  <u>Id.</u> (citing <u>Phillips</u>, 515 F.3d at 234-35).

**DISCUSSION**

**I.      Dodd-Frank Act Claim**

The Dodd-Frank Act contains a provision which protects against whistleblower retaliation.  <u>See</u> 15 U.S.C. § 78u-6(h)(1)(A).  It states, in pertinent part:

> [n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
> (i)   in providing information to the Commission in accordance with this section;
> (ii)  in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

<u>Id.</u>  The Dodd-Frank Act defines a "whistleblower" as "any individual who provides . . . information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission."  <u>Id.</u>

In 2011, the SEC promulgated a final rule clarifying the Dodd-Frank Act's whistleblower provision.   See   17 C.F.R.   §   240.21F-2(b)(1).     The rule states, in relevant part, that a whistleblower:

> (1) For purposes of the anti-retaliation protections afforded by [15 U.S.C. 78u–6(h)(1)], you are a whistleblower if:
>
> (i)   You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;
>
> (ii)  You provide that information in a manner described in [15 U.S.C. 78u–6(h)(1)(A)].
>
> (iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.

Id. (prohibition against retaliation).  The SEC explained in its Comments to the rule that "the third category [under § 78u-6(h)(1)(A)(iii)] includes individuals who report to persons or governmental authorities other than the Commission."  SEC Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300–01, at *34304, 2011 WL 2293084 (2011) ("Comments to Final Rule").

### A.  Parties' Arguments

The crux of the parties' arguments in this case is whether Plaintiff qualifies as a "whistleblower" under the Dodd-Frank Act.  Specifically, the parties dispute whether an individual must provide information to the SEC before being terminated to qualify as a "whistleblower" under the statute.

Defendants argue that Plaintiff is not a whistleblower because he did not report the alleged securities violations to the SEC prior to his termination.  (Defs. Br. 8.)  According to Defendants, because Plaintiff did not report anything to the SEC until after his termination, he could not have been retaliated against by Defendants.  (Id. at 8-9.)  Defendants contend that

Plaintiff's internal reporting of the alleged violations before being terminated is not sufficient to grant Plaintiff the full protection of the statute's anti-retaliatory provision. (Id. at 9, 11.)

Plaintiff contends that he qualifies as a whistleblower under the Dodd-Frank Act because he reported the alleged violations internally and to the SEC post-termination. (Pl. Opp. 3, 16-17.) Plaintiff argues that the statute has no temporal requirement necessitating his report to the SEC prior to his termination. (Id. at 16-17.) Furthermore, Plaintiff argues that the statute's "catch-all" provision incorporates sections of the Sarbanes-Oxley Act which affords protections to whistleblowers who only report violations internally. (Id. at 20.)

## B. Analysis

The resolution of this motion turns on principles of statutory construction. "[W]hen the statutory language is clear and unambiguous, the legislature's intent is best divined by reference to the plain meaning of a statute." Sery v. Fed. Bus. Centers, Inc., 365 F. App'x 396, 397 (3d Cir. 2010). "[T]he plain meaning of statutory language is often illuminated by considering not only the particular statutory language at issue, but also the structure of the section in which the key language is found, the design of the statute as a whole and its object." Alaka v. Attorney General, 456 F.3d 88, 104 (3d Cir. 2006) (internal quotation marks omitted). In particular, "[w]hen a statute includes an explicit definition, we must follow that definition." Stenberg v. Carhart, 530 U.S. 914, 942 (2000).

However, if the statute is ambiguous and the Congressional intent underlying the statute is unclear, courts look to the agency's construction of the statute for guidance. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984) (noting that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"). Furthermore, in

construing a statute, "if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001).

There is a split in authority regarding the scope of the whistleblower provision of the Dodd-Frank Act. Given the recency of the Dodd-Frank Act, relatively few courts have addressed this issue, including a handful of federal district courts and one Circuit Court. It is an issue of first impression in the District of New Jersey and has yet to be addressed by the Third Circuit.

Few courts—including the Fifth Circuit—have held that the Dodd-Frank Act unambiguously indicates that whistleblower protection applies exclusively to individuals who have reported information to the SEC. See Asadi v. G.E. Energy (USA), L.L.C., 720 F.3d 620, 629 (5th Cir. 2013) ("Based on our examination of the plain language and structure of the whistleblower-protection provision, we conclude that the whistleblower-protection provision unambiguously requires individuals to provide information relating to a violation of the securities laws *to the SEC* to qualify for protection from retaliation under § 78u-6(h)."(emphasis in original)); Wagner v. Bank of Am. Corp., No. 12-cv-00381, 2013 WL 3786643, at *4 (D. Colo. July 19, 2013) ("Ms. Wagner did not provide any information to the Commission, whether relating to a violation of the securities laws or otherwise, prior to her termination. Accordingly, she was not a 'whistleblower' as defined in this statute."); Banko v. Apple Inc., No. 13-cv-2977, 2013 WL 7394596, at *6 (N.D. Cal. Sept. 27, 2013) ("Because plaintiff did not file a complaint to the SEC, he is not a 'whistleblower' under the Dodd-Frank Act."). Pursuant to this view, there is no conflict between the statute's definition of a "whistleblower" and the types of protected activity identified in the statute. See Asadi, 720 F.3d at 627 (stating that "§ 78u-

6(h)(1)(A) does not provide alternative definitions of the term 'whistleblower' for purposes of the whistleblower-protection provision").  This, however, is the minority opinion.

On the other hand, most district courts addressing this issue have concluded that the Dodd-Frank Act's whistleblower provision is ambiguous on its face and they have relied on the SEC's final rule for guidance.  See e.g., Ellington v. Giacoumakis, No. 13-11791, 2013 WL 5631046, at *3 (D. Mass. Oct. 16, 2013) (relying on SEC's comments to the Dodd-Frank Act in holding that "Congress intended that an employee terminated for reporting Sarbanes-Oxley violations to a supervisor or an outside compliance officer, and ultimately to the SEC, have a private right of action under Dodd-Frank whether or not the employer wins the race to the SEC's door with a termination notice"); Murray v. UBS Sec., LLC, No. 12-5914, 2013 WL 2190084, at *4 (S.D.N.Y. May 21, 2013) (giving deference to the SEC's interpretation of the rule and holding that the anti-retaliation whistleblower provisions apply to individuals who report information to the SEC *or* provide disclosures that fall under § 78u–6(h)(1)(A)(iii)).  At least six district courts have construed the term "whistleblower" broadly and concluded that the Dodd-Frank anti-retaliation protections extend to individuals protected under the Sarbanes-Oxley Act regardless of whether disclosures were made to the SEC itself.  See Ellington, 2013 WL 5631046 at *3; Murray, 2013 WL 2190084, at  *7; Genberg v. Porter, 935 F. Supp. 2d 1094, 1106-07 (D. Colo. 2013); Nollner v. S. Baptist Convention, Inc., 852 F. Supp. 2d 986, 995 (M.D. Tenn 2012); Kramer v. Trans-Lux Corp., No. 11 Civ. 1424, 2012 WL 4444820, at *6-7 (D. Conn. Sept. 25, 2012); Egan v. Tradingscreen, Inc., No. 10 Civ. 8202, 2011 WL 1672066, at *6-7 (S.D.N.Y., May 4, 2011).

This Court agrees with the majority of district courts' view that the Dodd-Frank Act is ambiguous with respect to who qualifies as a whistleblower for purposes of the anti-retaliation

provision of the statute.  As one court noted, § 78u-6(h)(1)(A)(iii) of the statute "is in direct conflict with the DFA's definition of a whistleblower because it provides protection to persons who have not disclosed information to the SEC."  Genberg, 935 F. Supp. 2d at 1106. Accordingly, it is appropriate for this Court to look to the SEC's construction of the statute for guidance.  See Chevron, 467 U.S. at 843.

The SEC's final rule essentially expands the definition of "whistleblower" and explains that "the anti-retaliation whistleblower protection provisions of Dodd-Frank require Plaintiff to show that he either provided information to the SEC *or* that his disclosures fell under the four categories listed in Section 78u–6(h)(1)(A)(iii)."  Murray, 2013 WL 2190084, at *7 (emphasis in original).  In other words, under the SEC's rule, the Dodd-Frank Act's anti-retaliation protection would include individuals who report potential violations to a supervisory authority and not to the SEC itself.  See 17 C.F.R. § 240.21F–2(b)(1); SEC Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300–01, 2011 WL 2293084 (2011).  The SEC's rule harmonizes the contradictory provisions of the Dodd-Frank Act while not rendering any word or section superfluous.  See TRW Inc., 534 U.S. at 31. Thus, the SEC's rule is a permissible construction of the statute and warrants judicial deference.

In the instant matter, Plaintiff alleges that he possessed a reasonable belief that there were potential securities violations and he reported them to his supervisor.  (Am. Compl. ¶¶ 19, 28-35) Plaintiff further alleges he reported the violation to the SEC post-termination; however, Plaintiff does not provide any details regarding the timing or substance of the report to the SEC.  (Id. ¶ 68.)  Nevertheless, based on this Court's construction of the statute—consistent with the majority approach on the issue—internal reporting of potential violations is sufficient to qualify as a whistleblower under the Dodd-Frank Act's anti-retaliation provision.  Thus, in accepting all of

the facts in the Amended Complaint as true, this Court finds that Plaintiff has sufficiently pled a Dodd-Frank Act claim at the motion to dismiss stage.

## II.   Request to Compel Arbitration

Defendants request that the pending action be dismissed in favor of arbitration. Generally, courts recognize "a strong federal policy in favor of the resolution of disputes through arbitration" and enforce arbitration agreements "to the same extent as other contracts."  Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 178 (3d Cir. 2010) (internal citations and quotations omitted).  In considering a motion to compel arbitration, courts employ "a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).

The parties' October 25, 2006 agreement provides for mandatory arbitration of any and all disputes.  (See Taishoff Decl., Ex. 2, Agreement at Section 10.)  The parties agree that a valid, enforceable agreement exists.  However, the parties disagree as to whether the Dodd-Frank Act affects their pre-dispute arbitration agreement.

### A.  Parties' Arguments

Defendants argue that the Dodd-Frank Act does not bar the enforcement of arbitration agreements relating to employment disputes.  (Defs. Br. 19 (citing Ruhe v. Masimo Corp., No. 11-00734, 2011 WL 4442790, at *4 (C.D. Cal. Sept. 16, 2011) ("Plaintiffs must arbitrate their claims brought pursuant to 15 U.S.C. § 78-u because the Dodd-Frank act does not render pre-dispute arbitration agreements invalid or unenforceable for actions brought pursuant to this section.")).)    Further, Defendants contend that Plaintiff cannot rely on anti-arbitration amendments which are intended to apply only to Sarbanes-Oxley and not to Dodd-Frank

11

whistleblower claims under 16 U.S.C. § 78u-6.  (Defs. Br. 20.)  Defendants also argue that even if Dodd-Frank did bar the arbitration of whistleblower claims, it cannot be applied retroactively.  (Id.)

Plaintiff argues that the Dodd-Frank Act widened the protection given to whistleblowers by barring pre-dispute arbitration agreements.  (Pl. Opp. 23.)  Plaintiff contends that the plain language of the statute renders arbitration agreements unenforceable regardless of when they were executed.  (Id.)  Further, Plaintiff avers that the Financial Industry Regulatory Authority ("FINRA") promulgated a rule in May 2012—which was endorsed by the SEC—stating that pre-dispute arbitration agreements arising under whistleblower statutes are not enforceable.  (Id. at 26-27.)

**B.  Analysis**

The core question for this Court to address is whether the Dodd Frank Act's bar of pre-dispute arbitration agreements can be applied retroactively.  As Plaintiff correctly points out, the Dodd-Frank Act provides that "[n]o predispute arbitration agreement shall be valid or enforceable if the agreement requires arbitration of a dispute under this section."  15 U.S.C. § 1514A(e)(2).  However, on its face, the statute does not address retroactivity to arbitration agreements signed before its enactment.

In establishing whether a statute would have retroactive effect, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach."  Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994).  If the statute is silent as to its retroactive implications, then a court must consider "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  Id.

The retroactivity of the Dodd-Frank Act with regard to pre-dispute arbitration agreements executed before the statute's enactment is an issue of first impression in this Court and has yet to be addressed by the Third Circuit.  Because of the recent passage of the statute, few courts have examined this issue.  Among the few courts that have encountered this issue, there is a split of opinion.

For instance, in Pezza v. Investors Capital Corporation, the court found that the bar on pre-dispute arbitration would not produce prejudicial consequences if applied retroactively; thus, it "should also be applied to conduct that arose *prior* to [the statute's] enactment."  767 F. Supp. 2d 225, 234 (D. Mass. 2011) (emphasis in original).  Similarly, in Wong v. CKX, Inc., the court found that the Dodd-Frank Act applies to prohibit arbitration retroactively namely because it would not result in any disfavored consequence.  890 F. Supp. 2d 411, 422 (S.D.N.Y. 2012).

On the other hand, in Henderson v. Masco Framing Corporation, the court did not give retroactive effect to the Dodd-Frank Act's arbitration bar because it "would not merely affect the jurisdictional location in which such claims could be brought; it would fundamentally interfere with the parties' contractual rights and would impair the 'predictability and stability' of their earlier agreement."  No. 11-0088, 2011 WL 3022535, at *3 (D. Nev. July 22, 2011).  In the same vein, the court in Taylor v. Fannie Mae, et al. denied giving retroactive effect to the statute because it "fail[ed] to see how a retroactive application would not impair the parties' rights possessed when they acted."  839 F. Supp. 2d 259, 263 (D.D.C. 2012).  Additionally, the court in Weller v. HSBC Mortgage Services Incorporated asserted that "Pezza and Wong too blithely disregard the presumption against retroactivity and the need for 'predictability and stability' attendant on preserving established contractual expectations."   No. 13-00185, 2013 WL 4882758, at *4 (D. Colo. Sept. 11, 2013).  The Weller court further noted that "these decisions

disregard the very essence of the substantive/jurisdictional distinction as described by the Supreme Court itself: that 'jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties.'" Id.; see also Blackwell v. Bank of Am. Corp., No. 11-2475, 2012 WL 1229673, at \*4 (D.S.C. Mar. 22, 2012) report and recommendation adopted, No. 11-2475, 2012 WL 1229675 (D.S.C. Apr. 12, 2012) (denying retroactive effect of Dodd-Frank Act amendments regarding pre-dispute arbitration agreements).

As it relates to the first step, this Court finds that Congress did not explicitly command the Dodd-Frank Act's restriction on pre-dispute arbitration to apply retroactively. Thus, it is appropriate to address the consequences affecting the parties' substantive rights in applying this provision retroactively. See Landgraf, 511 U.S. at 278. This Court finds the reasoning in Henderson, Taylor, and Heller persuasive. Here, the parties executed a valid arbitration agreement in 2006. The parties' expectations were to arbitrate any issues arising from Plaintiff's employment claims. Although the arbitration prohibition of the Dodd-Frank Act affects the jurisdictional location of where the claims are brought, it also affects the parties' rights and obligations agreed upon in the arbitration agreement. Therefore, this Court finds that the Dodd-Frank Act does not operate retroactively to bar the parties' arbitration agreement. Thus, Defendant's Motion to Compel Arbitration is **granted**.

**CONCLUSION**

For the reasons stated above, Defendants' second Motion to Dismiss and Compel Arbitration is **GRANTED**. Defendants' first Motion to Dismiss is moot.


                                        s/ Susan D. Wigenton
                                        **Susan D. Wigenton, U.S.D.J.**

cc: Madeline Cox Arleo, U.S.M.J.